UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GEOFFREY GARAVAGLIA,

                Plaintiff,                Case No. 20-cv-12714

v.                                       Paul D. Borman
                                       United States District Judge
GEORGE P. JOHNSON PROJECT:
WORLDWIDE, INC. a/k/a GEORGE P.
JOHNSON COMPANY, GEORGE P.
JOHNSON COMPANY, and BRENT
JORDAN,

                Defendants.

_____/

## OPINION AND ORDER (1) GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF NO. 36) AND (2) DENYING DEFENDANTS' MOTION TO STRIKE PLAINTIFF'S RESPONSE AS MOOT (ECF NO. 39)

This is an employment discrimination case in which Plaintiff Geoffrey Garavaglia complains that Defendants Project Worldwide, Inc., George P. Johnson Company, and Brett Jordan discriminated against him because of his age and disability, retaliated against him for seeking workers' compensation benefits, and violated the Family & Medical Leave Act (FMLA) when it terminated him as part of a reduction-in-force.

Now before the Court are Defendants' Motion for Summary Judgment (ECF No. 36) seeking dismissal of all of Plaintiff's claims, which has been fully briefed,

and Defendants' Motion to Strike Plaintiff's Summary Judgment Response as untimely (ECF No. 39). Plaintiffs did not file a response in opposition to the motion to strike. The Court held a hearing on Defendants' motions on May 31, 2023, at which counsel for Plaintiff and Defendants appeared.

For the reasons that follow, the Court GRANTS Defendants' Motion for Summary Judgment, and DENIES AS MOOT Defendants' Motion to Strike Plaintiff's Summary Judgment Response.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

### A.    Factual Background

Defendant George P. Johnson Company (GPJ) is an event and experiential marketing agency that, in part, creates consumer-centric immersive experiences for corporate brands. *See* https://project.com/agencies/george-p-johnson [https://perma.cc/C6UV-L8YK]. Defendants offer, as an example of one of these immersive experiences, that GPJ was responsible for creating a 60,000 square-foot technical wonderland of lights, screens, and displays featuring each of Fiat Chrysler Automobile's seven brands for the North American International Auto Show. (ECF No. 36, Defs.' Mot., PageID.398.) To create these consumer experiences, GPJ employs an extensive staff of designers, engineers, estimators, project managers, graphic artists, and skilled trades, who take marketing concepts from design and engineering through fabrication and production.

2

Defendant Project: Worldwide, Inc. (which Defendants assert Plaintiff improperly named as "George P. Johnson Project: Worldwide, Inc.") is the parent company of George P. Johnson Company. And Defendant Brett Jordan is the Senior Vice President – Operations at GPJ's Auburn hills, Michigan location. (ECF No. 36-3, Jordan Decl. ¶ 2, PageID.618.)

Plaintiff Geoffrey Garavaglia had a varied work history with Defendant GPJ. He was first employed by GPJ as an estimator from 2006 through 2008, at which time he was laid off. (ECF No. 36-2, Pl's Dep. at pp. 30-32, PageID.453-55.) Plaintiff then performed work for GPJ as an independent contractor on two separate occasions between 2008 and 2010, for about six months each time. (*Id.* at pp. 33-34, PageID.456-57.) Plaintiff became an employee of GPJ again on June 8, 2015, when Plaintiff was 44 years old. He was hired to perform project management and estimating work. (*Id.* at pp. 36-37, PageID.459-60.) Plaintiff explained that estimating involves examining the initial design of a project, breaking the design into its component parts, and estimating a cost to build the project, factoring in material and labor costs, potential overruns, company margins, and the like. (*Id.* at pp. 19-20, PageID.442-43.) Project management, on the other hand, includes tasks such as reviewing estimates, ensuring the fabrication shop has the capacity to complete the project, sourcing materials, and maintaining the budget. (*Id.* at pp. 45-46, PageID.468-69.) Plaintiff estimates that roughly 85-90% of his work for GPJ

was estimating and the remainder was made up of project management tasks. (*Id.* at p. 47, PageID.470.)

On the evening of February 6, 2020, Plaintiff suffered a heart attack while playing hockey. (ECF No. 36-2, Pl.'s Dep. at pp. 67-68, PageID.490-91.) The next morning, Plaintiff's wife called GPJ Assistant Manager Brian Card to inform him of Plaintiff's heart attack and that he was currently in the hospital. (ECF No. 36-6, Email, PageID.646.) Between Friday, February 7 and Monday, February 10, Plaintiff's wife and GPJ Talent & Culture Manger, Danielle Budchuk, discussed Plaintiff's leave options. On the morning of February 10, 2020, Ms. Budchuk sent an email to Plaintiff's wife providing leave paperwork, explaining the five-day waiting period before short-term disability benefits would begin, providing an updated overview of GPJ's benefits, and providing contact information for GPJ's third-party leave administrator, Cigna. (ECF No. 36-7, Emails, PageID.648-52.)

Plaintiff then applied for leave under both GPJ's short-term disability plan and the Family and Medical Leave Act (FMLA). (ECF No. 36-8, PageID.654-55.) Plaintiff was approved for a continuous leave of absence from February 7, 2020, through May 8, 2020. Specifically, Plaintiff received leave from February 7, 2020, through April 30, 2020, under both the FMLA and GPJ's short-term disability plan, and, following the exhaustion of his 12 weeks of FMLA leave, he remained on short-term disability leave until May 8, 2020, at which time he was released by his doctor

4

to return to work. (*Id.*) Plaintiff admits that he received all of the leave benefits to which he was entitled, and that no one at GPJ discouraged him from taking leave, attempted to deny his leave, or voiced a problem with Plaintiff taking leave. (ECF No. 36-2, Pl.'s Dep. at p. 80, PageID.503.)

While Plaintiff was out on leave, the Michigan Department of Health and Human Services identified the first two presumptive-positive cases of COVID-19 in Michigan on March 10, 2020, and Michigan Governor Gretchen Whitmer declared a state of emergency that same day. Exec. Order 2020-03 (Mar. 10, 2020).[1] On March 16, 2020, Governor Whitmer temporarily closed places of public accommodation, Exec. Order 2020-09 (Mar. 16, 2020), and the following day she prohibited large assemblages of people and events. Exec. Order 2020-11 (Mar. 17, 2020).

Defendants state that the COVID-19 "stay home" executive orders had a substantial impact on GPJ because it relies on large in-person consumer events in public places for a substantial portion of its business. (ECF No. 36, Defs.' Mot., PageID.400, citing ECF 36-3, Jordan Decl. ¶ 5, PageID.619.) As a result, GPJ started

---

[1] The Executive Orders discussed here are available at https://www.michigan.gov/coronavirus/resources/orders-and-directives/lists/executive-orders#:~:text=There%20are%20no%20 effective%20COVID,the%20Governor%20at%20this%20time [https://perma.cc/8E6C-JLR8].

implementing company-wide cost-savings measures. (*Id.*) GPJ first implemented a company-wide 20% salary reduction for all employees on April 4, 2020. (ECF No. 36-4, Email, PageID.632.) Around that same time, GPJ instituted temporary furloughs of all employees, rotating employees on and off furlough to minimize the impact on any individual employee. (*Id.*) Plaintiff was aware of Defendants' implementation of the salary reduction and furloughs while he was on medical leave. (*Id.*) (ECF No. 36-2, Pl.'s Dep. at pp. 51-52, PageID.474-75.)

Prior to Plaintiff's planned date to return to work from leave on May 8, 2020, Ms. Budchuk spoke with Plaintiff regarding the furloughs that had been taking place at GPJ over the previous month and the necessity to place Plaintiff on furlough upon his return. (ECF No. 36-4, Emails, PageID.623-29 (explaining that Plaintiff's furlough was "slated to start on 5/8/2020 and go through 7/30/2020").) Plaintiff's doctor approved Plaintiff's return to work date of May 8, 2020, at which time Plaintiff was returned to work, immediately furloughed, and he began receiving unemployment benefits. (ECF No. 36-2, Pl.'s Dep. at pp. 54, 142-43, PageID.477, 565-66.)

As the COVID-19 pandemic continued, and as a result of the declining customer demand due to the pandemic and statewide efforts to stem the spread of the virus, the salary reductions and furloughs of GPJ employees were followed by a permanent reduction in force implemented on May 22, 2020, which reduced GPJ's

workforce by more than 22%. (ECF No. 36-3, Jordan Decl. ¶ 5, PageID.619) (ECF No. 36-5, Addendum, PageID.639-44 (listing GPJ employees, by job title and age, who were and were not selected for termination).) To implement the workforce reduction, GPJ managers were asked to make recommendations to senior management identifying individuals and positions to be eliminated that would have the least disruptive effect on the Company. (ECF No. 36-3, Jordan Decl. ¶ 6, PageID.619.) Specifically, for the Auburn Hills, Michigan location of GPJ, Defendant Jordan was asked to submit recommendations to Executive Vice President Craig Erlich. (*Id.*) Defendant Jordan in turn sought input from the departmental managers who reported to him at the Auburn Hills location, including Senior Project Manager Chad Wheeler, and Assistant Manager – Project Management Brian Card. (*Id.* ¶ 7, PageID.619.)

Based on this feedback, Defendant Jordan determined that while Plaintiff was performing at a satisfactory level, his work performance demonstrated that he was less capable than comparable employees with regard to taking on multiple roles within the company, performing new tasks, completing projects within compressed time frames, embracing a leadership mentality, trusting his coworkers, collaborating with others, and streamlining processes. (*Id.* ¶ 8, PageID.619-20.) As a result, Jordan determined that the elimination of Plaintiff's position would be less disruptive to Company operations. (*Id.* ¶ 9, PageID.620.) Jordan testified that he also

recommended the elimination of other positions at GPJ's Auburn Hills location based on this same analysis. (*Id.*)

Mr. Erlich reviewed and approved Jordan's recommendations, and on May 22, 2020, Plaintiff, along with 20 other employees across the country, were discharged as part of a reduction in force due to economic necessity occasioned by the COVID-19 pandemic. (*Id.* ¶ 10, PageID.620) (ECF No. 36-5, Addendum, PageID.639-44.) Plaintiff was 49 years old at the time of his discharge.

## B.    Procedural History

Plaintiff filed this action in the Macomb County Circuit Court on June 26, 2020, alleging claims for (1) age discrimination and retaliation under the Michigan Elliott-Larsen Civil Rights Act (ELCRA), (2) disability discrimination and failure to accommodate under the Michigan Persons with Disabilities Civil Rights Act (PWDCRA), (3) workers' compensation retaliation in violation of the Michigan Worker's Disability Compensation Act (WDCA), and (4) interference and retaliation under the federal Family and Medical Leave Act (FMLA). (ECF No. 1, Compl., PageID.9-16.)

Defendants timely removed this action to this Court on October 6, 2020, based on federal question and supplemental jurisdiction. (ECF No. 1, Notice of Removal (stating that the Summons and Complaint were first served on Defendant on

September 15, 2020).) Defendants filed an Answer to Plaintiff's Complaint that same day. (ECF No. 2.)

On September 22, 2022, Defendants filed the instant Motion for Summary Judgment, seeking dismissal of all of Plaintiff's claims. (ECF No. 36, Defs.' Mot.) Plaintiff's response to Defendants' motion was due on or before October 13, 2022, but no response was filed by that date.

The parties engaged in a settlement conference before Magistrate Judge David R. Grand on October 25, 2022, which was continued to November 15, 2022. However, no settlement was reached. (*See* Docket Report, Minute entries dated 10/25/2022 and 11/15/2022.)

Plaintiff then filed a late Response in opposition to Defendant's Motion for Summary Judgment on December 1, 2022. (ECF No. 38, Pl.'s Resp.)

On December 15, 2022, Defendants filed a Reply brief in support of their Motion for Summary Judgment. (ECF No. 40, Defs.' Reply.)

That same day, Defendants also filed a Motion to Strike Plaintiff's Response to Defendants' summary judgment motion, arguing that Plaintiff's Response brief was untimely and failed to comply with the requirements of the Eastern District of Michigan's Local Rules. (ECF No. 39, Defs.' Mot. Strike.) Defendants also move, alternatively, to strike Plaintiff's Affidavit submitted in support of Plaintiff's

Response because it is not based on personal knowledge and does not present admissible evidence, as required by Fed. R. Civ. P. 56(c)(4).

Plaintiff did not file a response in opposition to Defendants' Motion to Strike, and the time for doing so has passed.

## II. LEGAL STANDARD

Summary judgment is appropriate where the moving party demonstrates that there is no genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(a). "A fact is 'material' for purposes of a motion for summary judgment where proof of that fact 'would have [the] effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties.'" *Dekarske v. Fed. Exp. Corp.*, 294 F.R.D. 68, 77 (E.D. Mich. 2013) (quoting *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984)). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "In deciding a motion for summary judgment, the court must draw all reasonable inferences in favor of the nonmoving party." *Perry v. Jaguar of Troy*, 353 F.3d 510, 513 (6th Cir. 2003) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

"[T]he standard that a movant must meet to obtain summary judgment depends on who will bear the burden of proof at trial." *Pineda v. Hamilton Cnty.,*

10

*Ohio*, 977 F.3d 483, 491 (6th Cir. 2020) (citing *Celotex Corp.*, 477 U.S. at 322). Thus, if the nonmoving party will bear the burden of proof on a claim, the movant "need only demonstrate that the nonmoving party has failed to 'make a showing sufficient to establish the existence of an essential element' of that claim." *Id.* (quoting *Celotex*, 477 U.S. at 322). Then, "to survive a summary judgment motion, a plaintiff subject to a preponderance-of-the-evidence burden must present enough evidence to allow a reasonable juror to conclude that the [plaintiff's] position *more likely than not* is true." *Id.* (internal quotation marks omitted) (emphasis and alteration in original). "The 'mere possibility' of a factual dispute does not suffice to create a triable case." *Combs v. Int'l Ins. Co.*, 354 F.3d 568, 576 (6th Cir. 2004) (quoting *Gregg v. Allen-Bradley Co.*, 801 F.2d 859, 863 (6th Cir. 1986)). Instead, "the non-moving party must be able to show sufficient probative evidence [that] would permit a finding in [his] favor on more than mere speculation, conjecture, or fantasy." *Arendale v. City of Memphis*, 519 F.3d 587, 601 (6th Cir. 2008) (quoting *Lewis v. Philip Morris Inc.*, 355 F.3d 515, 533 (6th Cir. 2004)). "'The central issue is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Binay v. Bettendorf*, 601 F.3d 640, 646 (6th Cir. 2010) (quoting *In re Calumet Farm, Inc.*, 398 F.3d 555, 558 (6th Cir. 2005)). That evidence must be capable of

presentation in a form that would be admissible at trial. *See Alexander v. CareSource*, 576 F.3d 551, 558–59 (6th Cir. 2009).

## III.  ANALYSIS

In his Complaint, Plaintiff asserts four claims against Defendants: (1) age discrimination and retaliation under the Michigan Elliott-Larsen Civil Rights Act (ELCRA), (2) disability discrimination and failure to accommodate under the Michigan Persons with Disabilities Civil Rights Act (PWDCRA), (3) workers' compensation retaliation in violation of the Michigan Worker's Disability Compensation Act (WDCA), and (4) interference and retaliation under the federal Family and Medical Leave Act (FMLA). (ECF No. 1, Compl., PageID.9-16.)

### A. Plaintiff's Michigan PWDCRA Claim (Count II) and Workers' Compensation Retaliation Claim (Count III)

Plaintiff affirmatively states in his Response to Defendant's Motion for Summary Judgment that his Michigan PWDCRA disability claim (Count II) and his workers' compensation retaliation claim (Count III) may be dismissed. (ECF No. 38, Pl.'s Resp., PageID.666.) Plaintiff's counsel confirmed the dismissal of these two counts at the May 31, 2023, hearing on Defendant's motion for summary judgment.

Accordingly, Plaintiff's Michigan PWDCRA disability claim in Count II of his Complaint and his workers' compensation retaliation claim in Count III are dismissed with prejudice.

### B. Plaintiff's Michigan ELCRA Age Discrimination Claim (Count I)

Plaintiff alleges a claim for age discrimination and retaliation under the Michigan Elliott-Larsen Civil Rights Act (ELCRA), Mich. Comp. Laws 37.2101, *et seq.* Plaintiff alleges in his Complaint that age "was a least one factor that made a difference in Defendants['] decision to terminate [him]." (ECF No. 1, Compl. ¶¶ 10-16.)

Defendants argue that they are entitled to summary judgment on Plaintiff's age discrimination claim because Plaintiff was discharged as part of an economically motivated RIF necessitated by the COVID-19 pandemic and the Governor's "stay home" orders without regard to his age, and Plaintiff cannot establish a prima facie case of discrimination, or that Defendants' legitimate non-discriminatory reason for Plaintiff's termination is a pretext for discrimination.

At the summary judgment stage, "a plaintiff must prove discrimination with admissible evidence, either direct or circumstantial, sufficient to permit a reasonable trier of fact to conclude that discrimination was a motivating factor for the adverse action taken by the employer toward the plaintiff." *Lytle v. Maladay*, 458 Mich. 153, 175 (1998). In the absence of direct evidence, Plaintiff's claims are analyzed under

13

the burden-shifting framework announced in *McDonnell Douglas v. Green*, 411 U.S. 792 (1973). *Featherly v. Teledyne Indus., Inc.*, 194 Mich. App. 352, 358 (1992).

Under that framework, Plaintiff has the initial burden of proving a prima facie case. To establish a prima facie case of intentional discrimination under the ELCRA, a plaintiff must show that he was (1) a member of the protected category; (2) subjected to an adverse employment action; (3) qualified for the position; and (4) discharged under circumstances that give rise to an inference of unlawful discrimination. *Lytle*, 458 Mich. at 172-73. In the context of a reduction in workforce, the fourth requirement is modified to require the plaintiff to offer some "direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons." *Barnes v. GenCorp Inc.*, 896 F.2d 1457, 1465 (6th Cir. 1990); *see also Featherly*, 194 Mich. App. at 357-58 ("Michigan courts have considered federal law when reviewing claims of age discrimination based on state law."); *Matras v. Amoco Oil Co.*, 424 Mich. 675, 684 (1986) (requiring an employee laid off for economic reasons establishing a prima facie case "to present sufficient evidence on the ultimate question – whether age was a determining factor in the decision to discharge the older protected employee").

If the plaintiff can establish a prima facie case, the employer has the burden of production to come forward with a legitimate, nondiscriminatory reason for the

adverse employment action. *Lytle*, 458 Mich. at 172-73. Plaintiff then has the burden of proving that the employer's nondiscriminatory reason was merely pretext for discrimination or retaliation. *Id*. To establish pretext, a plaintiff must show that the defendant's reason for termination "has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Thompson v. Fresh Prods., LLC*, 985 F.3d 509, 522 (6th Cir. 2021).

The Michigan Supreme Court has explained that to hold a defendant liable for age discrimination in a reduction-in-force case, the plaintiff must present sufficient evidence that age was a "determining factor" in the defendant's decision to discharge the plaintiff. *See Matras*, 424 Mich. at 682. A plaintiff does not need to prove that age was the sole or main reason for the employment action but only that age made a difference in the employment decision. *Id.*

### 1. Plaintiff's ELCRA termination claim

Defendants first argue that Plaintiff's age discrimination claim fails because he has no evidence of discrimination with respect to his termination other than the fact that some employees younger than him were retained. However, in a RIF case, "[e]vidence that a competent older employee was terminated and a younger employee was retained, standing alone, is insufficient to establish a prima facie case[.]" *See Featherly*, 194 Mich. App. at 359 (citing *Matras*, 424 Mich. at 684); *see also Schoonmaker v. Spartan Graphics Leasing, LLC*, 595 F.3d 261, 267 (6th Cir.

2010) (collecting cases stating that the mere fact that younger employees are retained during a reduction in workforce is insufficient to state a prima facie case). In fact, in the GPJ work force reduction at issue in this case, some employees younger than Plaintiff were discharged, and some older employees were retained. (See ECF No. 36-5, Addendum, PageID.639-44 (showing that employees as young as 28 were discharged as part of the RIF, and that employees as old as 60 were retained).)

In addition, Plaintiff testified that he only remembers working on projects that required in-person consumer attendance while employed at GPJ (ECF No. 36-2, Pl.'s Dep. at p. 49, PageID.472), and those are exactly the type of gatherings that were prohibited by the Governor's "stay home" orders issued starting in March 2020. Defendants have presented summary judgment evidence that the COVID-19 pandemic and the Governor's "stay home" orders closing places of public accommodation and prohibiting large gatherings had a significant economic impact on GPJ's business, resulting in the discharge of 22% of its workforce, including the elimination of Plaintiff's position. (ECF No. 36-3, Jordan Decl. ¶¶ 5-12, PageID.619-20) (ECF No. 36-5, Addendum, PageID.639-44.)

Defendants further point out that Plaintiff admits that no one at GPJ made any comments to him about his age, and, more importantly, he further admits that he has no reason to believe that his age was related to the selection of his position for elimination in the RIF:

Q.      … Did anyone at George P. Johnson Company ever make any kind of disparaging comments to you about your age?

A.      Not that I can recall.

Q.      … Did anyone ever say anything about your age at all?

A.      Not that I can recall.

***

Q.      Do you have any reason to believe that your position was chosen for elimination due to your age?

A.      No.

(ECF No. 36-2, Pl.'s Dep. at pp. 83-85, PageID.506-08.)

As Defendants correctly argue, Plaintiff's lack of evidence coupled with his admissions defeat his age discrimination claim based on his termination in the RIF. Indeed, in seeming recognition of this deficiency, Plaintiff states in his Response brief that his age discrimination claim is not based on his termination in May 2020, but rather "centers around" six alleged failures to promote. (ECF No. 38, Pl.'s Resp., PageID.686 ("The ELCRA age count centers around these six failures to promote, not Plaintiff's discharge in May 2020.").)

Accordingly, the Court grants summary judgment to Defendants on Plaintiff's age discrimination claim based on his May 22, 2020, termination as part of a company-wide RIF at GPJ brought on by the economic consequences associated with the COVID-19 pandemic and dismiss that claim with prejudice.

17

Although Count I in Plaintiff's Complaint is titled "Age discrimination, Retaliation," it does not appear that Plaintiff is asserting a separate retaliation claim under the ELCRA based on his age. "To establish a prima facie case of unlawful retaliation under the Civil Rights Act, a plaintiff must show (1) that he engaged in a protected activity; (2) that this was known by defendant; (3) that the defendant took an employment action adverse to the plaintiff; and (4) that there was a causal connection between the protected activity and the adverse employment action." *El-Khalil v. Oakwood Healthcare, Inc.*, 504 Mich. 152, 161 (2019). As Defendants correctly argue in their Motion, Plaintiff offers no evidence that he engaged in any activity protected under the ELCRA while employed at GPJ, such as complaining of age discrimination, and thus he cannot establish that he engaged in any protected activity, much less that any protected activity was known to Defendants or that there was a causal connection between any protected activity and an adverse employment action. Plaintiff fails to even respond to this argument in his Response brief, and in fact asserts only that his ELCRA claim "centers around" six alleged failures to promote, and he therefore waives any opposition to Defendants' motion as to an ELCRA retaliation claim.

Accordingly, to the extent Plaintiff purports to bring an ELCRA retaliation claim, that claim is dismissed with prejudice.

## 2.  Plaintiff's ELCRA failure-to-promote claim

Turning to Plaintiff's "failure to promote" claim under the ELCRA, Plaintiff claimed in his deposition that he was passed over for promotion "[a]pproximately six" times as a result of "management changes" during his employment with GPJ between June 2015 and May 22, 2020. (ECF No. 36-2, Pl.'s Dep. at pp. 169-70, PageID.592-93; *but see id.* at p. 189, PageID.612 (stating that the number of missed promotions "would be five.").) Plaintiff does not identify these six alleged lost promotional opportunities in his Complaint, but based on the Court's review of Plaintiff's deposition testimony, he appears to complain that he did not receive the following positions or "promotions" arising out of "management changes" during his tenure at GPJ between June 2015 and May 2020:

(1) Position assumed by Dave Tabbert when John Doan retired, in the 2016-2017-time period;

(2) Estimating manager position awarded to Greg Skarritt in 2017;

(3) Estimating manager position awarded to Bill Fitzgerald (no date provided);

(4) Senior account manager position awarded to Amanda Lapham in 2019;

(5) Estimating manager position awarded to Greg Skarritt in 2019; and

(6) Estimating manager position awarded to Brian Card in 2019.

(ECF No. 36-2, Pl.'s Dep. at pp. 151, 169-81, 190, PageID.574, 593-604, 613.)

19

Plaintiff's descriptions of these six alleged promotional opportunities, including the exact job title, the qualifications for the position, the date the position became available or was posted, the date the position was filled, the age of the person filling the position, that person's qualifications, and who made the hiring decisions is not clearly set forth in his deposition. Plaintiff did not more specifically identify these six alleged promotional opportunities in his Response brief or in his Affidavit attached in support of his Response. Plaintiff testified in his deposition that he generally did not submit an application for the positions (other than perhaps the two discussed below) because the positions were not "posted" or "publicly put out there." (*Id.* at pp. 169, 171, 173, 177-78, 189-90, PageID.592, 594, 596, 600-01, 612-13.) He further testified that he did not inform Defendants that he was interested in most of the positions. (*Id.* at pp. 172-74, 190, PageID.595-97, 613.)

Plaintiff does not present any "direct evidence of impermissible bias" with regard to these claimed promotional opportunities, and so his claim of age discrimination/failure to promote must proceed under the *McDonnell Douglas* burden-shifting framework discussed above. First, Plaintiff must set forth a prima facie case by presenting evidence that (1) he belongs to a protected class, (2) he suffered an adverse employment action, (3) he was qualified for the position, and (4) the job was given to another person under circumstances giving rise to an inference of discrimination. *White v. Dep't of Transp.*, 334 Mich. App. 98, 108 (2020) (citing

20

*Hazle v. Ford Motor Co.*, 464 Mich. 456, 463 (2001)); *see also Crane v. Mary Free Bed Rehab. Hosp.*, 634 F. App'x 518, 524 (6th Cir. 2015) (same) (citing *Sniecinski v. Blue Cross & Blue Shield of Mich.*, 469 Mich. 124, 134 (2005)).

If Plaintiff establishes a prima facie case of discrimination, Defendants have the opportunity to articulate a legitimate, nondiscriminatory reason for the employment decision in an effort to rebut the presumption created by Plaintiff's prima facie case. *Id*. If Defendants give a legitimate, nondiscriminatory reason for the employment decision, the presumption of discrimination is rebutted, "and the burden shifts back to the plaintiff to show that the defendant's reasons were not the true reasons, but a mere pretext for discrimination." *Sniecinski*, 469 Mich. at 134. "At that point, in order to survive a motion for summary disposition, the plaintiff must demonstrate that the evidence in the case, when construed in the plaintiff's favor, is 'sufficient to permit a reasonable trier of fact to conclude that discrimination was a motivating factor for the adverse action taken by the employer toward the plaintiff.'" *Hazle*, 464 Mich. at 465 (quoting *Lytle*, 458 Mich. at 176); *Lytle*, 458 Mich. at 182 ("[M]ere disproof of an employer's proffered 'nondiscriminatory' reason is insufficient to survive summary disposition [under the ELCRA], unless such disproof also raises a triable question of discriminatory motive, not mere falsity.").

In this case, Defendants argue that Plaintiff's failure-to-promote age discrimination claims fail because he cannot make out a prima facie case for any of the positions, much less demonstrate pretext. The Court agrees. Plaintiff has not presented to the Court any evidence regarding the requirements of the purported positions, his qualifications for any of the alleged lost promotional opportunities, the qualifications of the person awarded the position, or that the positions were given to another person under circumstances giving rise to an inference of discrimination. *See White*, 334 Mich. App. at 108. Plaintiff's subjective views as to his qualifications in relation to other coworkers, and his claims that others were awarded positions he believed he should get, without more, are insufficient to establish discrimination. *See Schoonmaker*, 595 F.3d at 268-69 (citing *Briggs v. Potter*, 463 F.3d 507, 516-17 (6th Cir. 2006) (holding that a plaintiff's subjective views of his qualifications in relationship to other applicants, without more, fails to establish discrimination)). "[T]he law does not require employers to make perfect decisions, nor forbid them from making decisions that others may disagree with." *Browning v. Dep't of Army*, 436 F.3d 692, 698 (6th Cir. 2006) (citation omitted).

Looking more closely at the Senior Account Manager position awarded to Amanda Lapham in 2019, Plaintiff only contends that he applied for the position and did not receive it, and that Amanda Lapham, age 31, was awarded the position. (ECF No. 36-2, Pl.'s Dep. at p. 151, PageID.574.) Plaintiff offers no evidence of the

requirements of the position, or his qualifications as compared to Ms. Lapham's. Defendants, however, offer evidence that Ms. Lapham was hired by GPJ on December 3, 2014, as Event Services Specialist and twice promoted before the Senior Account Manager position opened in 2019. (ECF No. 40-10, PageID.973-75.) Further, Ms. Lapham has a bachelor's degree in Advertising and Public Relations and a history of good performance and promotions within the Company. (*Id.*) Plaintiff's age discrimination claim cannot stand on his sole assertion that the position was awarded to a younger employee, without also presenting some evidence that age discrimination was a motivating factor in the employment action. *See White*, 334 Mich. App. at 108. And Plaintiff's subjective claim that he was more qualified does not create a question of fact. *Id.* at 110-11; *see also Wrenn v. Gould*, 808 F.2d 493, 502 (6th Cir. 1987) (employee's "perception of his competence, and the incompetence of those competing against him, is irrelevant"); *LaGrant v. Gulf & Western Mfg. Co.*, 748 F.2d 1087, 1090-91 (6th Cir. 1984) (an employee's "subjective determination that he was better qualified than" others who were retained is insufficient to establish that age played any role in the employment decision).

Looking at the five other alleged promotional opportunities Plaintiff complains of, seemingly all for an estimating manager position (Plaintiff is less than clear about this), he fails to offer any details and requirements of those positions, or

a comparison of his qualifications to the employees chosen for the positions, and

Plaintiff admits that he does not have any evidence that his age played a part in those

decisions. (ECF No. 36-2, Pl.'s Dep. at pp. 175-76, 180, 190, PageID.598-99, 603,

613.) Plaintiff testified that he did not submit an application for at least four of those

positions (*id.* at p. 169, PageID.592),[2] does not know who made the employment

decisions, though he guessed that it was "upper management" – Jordan, Craig Erlich,

and Larry Vallee (*id.* at pp. 172, 175, 177-78, PageID.595, 598, 600-01), and he

testified that one application he submitted was denied as untimely, and not because

of his age (*id.* at p. 151, PageID.574). "[P]laintiff cannot simply show that

[Defendants'] decision was wrong or mistaken, since the factual dispute at issue is

whether discriminatory animus motivated the employer, not whether the employer

is wise, shrewd, prudent, or competent." *Hazle*, 464 Mich. at 476 (quotation marks,

citation, and alteration omitted). A plaintiff's challenge to the employer's business

judgment is insufficient to raise a question of fact of whether the nondiscriminatory

---

[2] A plaintiff can still succeed on a failure-to-promote claim under the ELCRA if he did not apply for the position at issue if he shows that "'the employer promotes employees into the position[] in question without asking for applications or posting the opening so that employees could apply for the position[].'" *Russell v. Three Pillars, Inc.*, No. 21-1481, 2022 WL 351770, at *5 (6th Cir. Feb. 7, 2022) (quoting *Wanger v. G.A. Gray Co.*, 872 F.2d 142, 145-46 (6th Cir. 1989)). Plaintiff appears to contend that is what happened in this case. (ECF No. 36-2, Pl.'s Dep. at p. 169, PageID.592 (stating that "no application was submitted for them because it was not publicly put out there.").)

reason for the employment decision was a pretext for age discrimination. *See White*, 334 Mich. App. at 111 (citation omitted); *see also Lewis v. City of Detroit*, 702 F. App'x 274, 284 (6th Cir. 2017) ("[I]t was a legitimate, nondiscriminatory reason to deny [Plaintiff] a promotion. [Plaintiff's] disagreement with the 'soundness of [the] business judgment' is not proof of age-based animus. [Plaintiffs] have not demonstrated pretext, and their claims fail equally under state and federal law." (internal citation omitted)). All Plaintiff has shown is that other individuals were promoted within the Company, and he was not. This is wholly insufficient to support his age discrimination claim. "[T]o survive a summary judgment motion, a plaintiff subject to a preponderance-of-the-evidence burden must present enough evidence 'to allow a reasonable juror to conclude that the [plaintiff's] position *more likely than not* is true." *Pineda*, 977 F.3d at 491 (alteration and emphasis in original, end citations omitted). Plaintiff has failed to present such evidence.

Accordingly, the Court finds that Plaintiff fails to establish a material question of fact whether age was a motivating factor in any of the promotion opportunities he complains of, and thus grants summary judgment to Defendants on Plaintiff's failure-to-promote age discrimination claim and dismisses that claim with prejudice.

### C. Plaintiff's FMLA Claims (Count IV)

That leaves Plaintiff's FMLA claims. Plaintiff alleges that he suffered a cardiovascular condition in February 2020 that required a medical leave of absence,

and when he was released by his treating physician to return to work in May 2020, he was terminated. Plaintiff claims that his termination violated his rights under the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2601 *et seq*. (ECF No. 1, Compl. PageID.14-15.)

The FMLA "entitles qualifying employees up to twelve weeks of unpaid leave each year if, among other things, an employee has a 'serious health condition that makes the employee unable to perform the functions of the position of such employee." *Walton v. Ford Motor Co.*, 424 F.3d 481, 485 (6th Cir. 2005) (quoting 29 U.S.C. § 2612(a)(1)(D)). Congress enacted the FMLA "to balance the demands of the workplace with the needs of families, to promote the stability and economic security of families, and to promote national interests in preserving family integrity." 29 U.S.C. § 2601(b)(1)-(5). The FMLA makes it unlawful for any employer "to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided [by the Act]," 29 U.S.C. § 2615(a)(1), or to "discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by [the Act]." *Id.* § 2615(a)(2).

Thus, there are two discrete theories of recovery under the FMLA: (1) the "interference" theory arising under § 2615(a)(1), and (2) the "retaliation" theory arising from § 2615(a)(1) or (2). *See Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 282 (6th Cir. 2012); *see also Milman v. Fieger & Fieger, P.C.*, 58 F.4th 860,

866-67 (6th Cir. 2023) (holding that FMLA retaliation claims may arise under §

2615(a)(1) or § 2615(a)(2)). Under the interference theory, the plaintiff must show

that the employer interfered with an FMLA-created right to medical leave or to

reinstatement following leave. *Seeger*, 681 F.3d at 282. Under a retaliation theory,

the plaintiff must show that the employer took an adverse action against him for

exercising or attempting to exercise a right protected by the FMLA. *Milman*, 58

F.4th at 866 (citing *Bryant v. Dollar Gen. Corp.*, 538 F.3d 394, 400-02 (6th Cir.

2008)).

Where a plaintiff relies on indirect evidence, claims of FMLA interference

and retaliation are subject to the same tripartite burden-shifting framework under

*McDonnell Douglas* discussed above. *Donald v. Sybra*, 667 F.3d 757, 762 (6th Cir.

2012); *see also Render v. FCA US, LLC*, 53 F.4th 905, 919 (6th Cir. 2022)

(explaining that courts apply "the burden shifting framework when an employee

alleged that his employer interfered with his FMLA rights by terminating him

because employers can terminate employees for many reasons – only some of which

amount to FMLA interference"). Thus, once a plaintiff offers sufficient indirect

evidence to support his prima facie FMLA claim, the burden of production shifts to

the defendant to articulate a legitimate, non-discriminatory reason for the

employment decision. *McDonnell Douglas,* 411 U.S. at 802; *Seeger,* 681 F.3d at

284. If the defendant articulates a legitimate reason for its action, the plaintiff bears

27

the ultimate burden of production to demonstrate pretext. *Seeger,* 681 F.3d at 285. A plaintiff may show pretext by demonstrating that the proffered reason (1) had no basis in fact; (2) did not actually motivate the action; or (3) was insufficient to warrant the action. *Id.; Smith v. Chrysler Corp.,* 155 F.3d 799, 805-06 (6th Cir.1998).

### 1.  Plaintiff's FMLA interference claim

An employer is liable under the interference theory when it "shortchanges an employee's leave time, denies reinstatement, or otherwise interferes with an employee's substantive FMLA rights." *Marshall v. The Rawlings Co.*, 854 F.3d 368, 384-85 (6th Cir. 2017) (alterations and citations omitted). To establish a claim for interference under the FMLA, Plaintiff must show that: (1) he is an eligible employee; (2) GPJ is an employer as defined under the FMLA; (3) Plaintiff was entitled to leave under the FMLA; (4) he gave GPJ notice of his intention to take leave; and (5) GPJ denied Plaintiff FMLA benefits to which he was entitled. *Harris v. Metro Gov't of Nashville & Davidson Cnty., Tenn.*, 594 F.3d 476, 482 (6th Cir. 2010); *see also Marshall*, 854 F.3d at 385 (stating that, to survive summary judgment, the employee must produce evidence showing that his employer denied him leave or refused to reinstate him once he returned). Defendants argue that Plaintiff cannot show that he was denied a benefit provided by the FMLA.

28

As Defendants correctly state, Plaintiff suffered a heart attack on the evening of February 6, 2020, and he immediately began a continuous leave of absence. (ECF No. 36-6, Emails, PageID.646) (ECF No. 36-8, Cigna Leave Summary, PageID.654-56.) Specifically, Cigna, GPJ's third-party leave administrator, approved Plaintiff for continuous FMLA leave beginning February 7, 2020, through April 30, 2020 – a full 12 weeks of leave. (ECF No. 36-8, Cigna Leave Summary, PageID.654-56.) Plaintiff's FMLA leave ran concurrently with leave provided under GPJ's short-term disability plan. (*Id.*) Although Plaintiff remained on leave through May 8, 2020, the additional leave from May 1, 2020, through May 8, 2020, was provided only under GPJ's short-term disability plan. (*Id.*) Thus, Defendants argue, it is undisputed that Plaintiff was provided the full leave to which he was entitled under the FMLA, and he cannot establish that Defendants interfered with his FMLA leave.

However, the FMLA also grants a plaintiff the right to reinstatement. Indeed, the Sixth Circuit Court of Appeals has explained that "[t]he right to reinstatement guaranteed by 29 U.S.C. § 2614(a)(1) is the linchpin of the [interference claim] because the FMLA does not provide leave for leave's sake, but instead provides leave with an expectation that an employee will return to work after the leave ends." *Edgar v. JAC Prods., Inc.,* 443 F.3d 501, 507 (6th Cir. 2006) (internal quotation marks omitted). But the FMLA is not a strict-liability statute, *see id.* (citation omitted), and "the right to reinstatement is not absolute." *Saulter v. Detroit Area*

29

*Agency on Aging*, 562 F. App'x 346, 360 (6th Cir. 2014) (citing *Edgar*, 443 F.3d at

507). An employer is only obligated to reinstate a plaintiff to the position he would

have been in had he not taken leave:

> An employee has no greater right to reinstatement or to other benefits
> and conditions of employment than if the employee had been
> continuously employed during the FMLA leave period.

29 C.F.R. § 825.216(a). Thus, "[a]n employee lawfully may be dismissed,

preventing him from exercising his statutory rights to FMLA leave or reinstatement,

but only if the dismissal would have occurred regardless of the employee's request

for or taking of FMLA leave." *Arban v. West Pub'g Co.*, 345 F.3d 390, 401 (6th Cir.

2003); *see also Hoge v. Honda of Am. Mfg., Inc.*, 384 F.3d 238, 245 (6th Cir. 2004)

("[A]n employer need not restore an employee who would have lost his job or been

laid off even if he had not taken FMLA leave.").

As discussed above, Defendants have advanced the company-wide reduction

in force as a legitimate reason to discharge Plaintiff, and the Sixth Circuit Court of

Appeals has held that such a reduction in force is a legitimate, nondiscriminatory

reason for terminating an employee who has taken FMLA leave. *See Madry v.

Gibralter Nat'l Corp.*, 526 F. App'x 593, 597 (6th Cir. 2013) ("We have previously

found that the restructuring of a business was a legitimate, nondiscriminatory reason

for terminating an employee who had incidentally taken FMLA leave.") (citing

*Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 315 (6th Cir. 2001)); *Roll v.

*Bowling Green Metalforming, LLC*, 457 F. App'x 458, 461-62 (6th Cir. 2012) (holding that decision to terminate employee as part of companywide reduction-in-force was not pretextual under the FMLA). In other words, "interference with an employee's FMLA rights does not constitute a violation if the employer has a legitimate reason unrelated to the exercise of FMLA rights for engaging in the challenged conduct." *Edgar*, 443, F.3d at 508.

Plaintiff admits that he was reinstated on May 8, 2020, following the expiration of his FMLA and short-term disability leave time, and immediately furloughed. (ECF No. 36-2, Pl.'s Dep. at pp. 54, 57-58, PageID.477, 480-81.) Defendants thus satisfied their obligation under the FMLA. Plaintiff testified that he was aware that other employees were also being furloughed both before and after his reinstatement. (*Id.* at p. 55, PageID.478.) Defendants have explained that employees were furloughed to attempt to stave off a permanent reduction in force, and had Plaintiff not been on leave, he would have been furloughed. Plaintiff has not disputed this and has not produced any evidence sufficient to convince a trier of fact that his furlough on May 8, 2020, following his reinstatement from leave, and his subsequent discharge on May 22, 2020, along with 22% of Defendants' workforce, would not have occurred if he had not taken FMLA leave.

Accordingly, the Court grants Defendants' summary judgment on Plaintiff's FMLA interference claim and dismisses this claim with prejudice.

31

## 2. FMLA retaliation claim

To establish a prima facie claim of FMLA retaliation, Plaintiff must demonstrate that: (1) he was engaged in protected activity; (2) GPJ knew he was engaged in protected activity; (3) GPJ took an adverse employment action against him; and (4) there was a causal connection between the protected activity and the adverse employment action. *Killian v. Yorozu Auto. Tenn., Inc.*, 454 F.3d 549, 556 (6th Cir. 2006). "The burden of establishing a prima facie case in a retaliation action is not onerous, but one easily met." *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 523 (6th Cir. 2008) (citation omitted). "[T]he causal connection between the protected activity and the adverse employment action necessary for a prima facie case of retaliation can be established solely on the basis of close temporal proximity." *Judge v. Landscape Forms, Inc.*, 592 F. App'x 403, 409 (6th Cir. 2014). The Court finds that the temporal proximity between Plaintiff's FMLA leave (which ended on May 7, 2020) and his termination in the reduction in force (on May 22, 2020) is sufficient to satisfy the causal connection element of Plaintiff prima facie FMLA retaliation claim.

However, that is not the end of the analysis. The burden then shifts to Defendants to establish legitimate, nondiscriminatory reasons for Plaintiff's termination. Defendants have done so here, stating that Plaintiff was discharged as a result of a company-wide reduction in force brought on by the economic

consequences associated with the COVID-19 pandemic in which GPJ eliminated 22% of its workforce, including Plaintiff's position. Plaintiff has failed to establish an issue of material fact as to whether Defendants' stated reason for discharging him was pretext.

Unlike at the prima facie stage, the proximity in time between Plaintiff's FMLA-protected leave and his discharge "is not alone sufficient to establish that [Defendants'] legitimate, nondiscriminatory reason for discharge was a pretext." *Heady v. U.S. Enrichment Corp.*, 146 F. App'x 766, 770-71 (6th Cir. 2005) (citing *Skrjanc*, 272 F.3d at 317). Defendants contend that Plaintiff has failed to offer any probative evidence that he was not discharged as part of a RIF *and* that the real reason for the elimination of his position was because he exercised his rights under the FMLA. Defendants point out that Plaintiff admits that no one at GPJ ever said anything negative to him about his FMLA leave. (ECF No. 36-2, Pl.'s Dep. at pp. 84-85, PageID.507-08.) Plaintiff further testified that he has no reason to believe his position was selected for elimination in the RIF because he took leave:

> Q.   Do you have any reason to believe that your position was selected for elimination as a result of any of the leave you had taken?
>
> A.   No.

(*Id.* at pp. 88-89, PageID.511-12.)

Plaintiff now contends that he has produced other evidence, in addition to temporal proximity, to establish that he was terminated because of exercising his rights under the FMLA. The Court finds, however, that Plaintiff has offered no substantive evidence to rebut Defendants' legitimate reason for terminating him. *See Tillotson v. Manitowoc Co.*, 727 F. App'x 164, 169 (6th Cir. 2018) ("At the summary judgment stage, the nonmovant is required [to] 'put up or shut up' on the critical issues of his asserted cause of action.") (citing *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989)). Plaintiff retains the burden of persuasion to demonstrate pretext, and he "must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus.*, 475 U.S. at 586.

Plaintiff incorrectly asserts that he was the only terminated employee who was not rehired by Defendants, relying on his unsupported assertion in his post-deposition Affidavit, dated November 29, 2022, attached to his December 1, 2022, Response brief.[3] That assertion was not made in Plaintiff's July 13, 2022, deposition,

---

[3] Affidavits defeat summary judgment only if they are "made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." *Ondo v. City of Cleveland*, 795 F.3d 597, 604 (6th Cir. 2015); Fed. R. Civ. P. 56(c)(4). Plaintiff's contention in his Affidavit that he was the only individual not called back to work following the RIF is purportedly based on his reading of deposition testimony of other individuals, Wheeler and Jordan, not on his personal knowledge. (See ECF No. 38-2, Pl.'s Aff. ¶¶ 17-19, PageID.725; *see also id.* at PageID.724 (stating that his Affidavit is based on his review of the deposition transcripts, documents produced by Defendants, and Defendants' motion for summary judgment).) It is

and is not supported by anything in the record in this case. Mr. Jordan testified in his November 2, 2022, deposition that five positions in the Fabrication Operations group were eliminated in the RIF: Plaintiff, Keith Gelow, Ed Rowden, Kent Beach, and Greg Hodge. (ECF No. 40-4, Jordan Dep. at pp. 15-16, 20, PageID.902-03, 907.) Mr. Wheeler then separately testified that three different people, from outside the Fabrications Operations group, were rehired at some later date at Defendants' Auburn Hills location: Doug Johnson, Tracy Moore, and Kim Buckland. (ECF No. 40-5, Wheeler Dep. at p. 21, PageID.950.) None of those three rehired employees were in the Fabrication Operations group or reported to Mr. Jordan, and thus they have no similarity to Plaintiff.

Plaintiff also questions Defendants' alleged use of subjective criteria in the RIF discharge decision. However, "the use of subjective evaluation criteria does not by itself show discrimination, particularly in a reduction in force case." *Beck v. Buckeye Pipeline Servs.*, 501 F. App'x 447, 451 (6th Cir. 2012); *see also Tillotson*, 727 F. App'x at 169 (stating that a plaintiff cannot prove discrimination merely because the employer relied upon highly subjective qualities in making an employment decision) (citing *Goosby v. Johnson & Johnson Med., Inc.*, 228 F.3d

---

therefore not sufficient summary judgment evidence. More importantly, as discussed further above, that contention is contradicted by the deposition testimony of Wheeler and Jordan and thus is factually incorrect.

313, 321 (3d Cir. 2000)). Defendant Jordan sufficiently explained that he met with and sought input from the departmental managers who reported to him at the Auburn Hills location to identify individuals and positions to be eliminated in the reduction in force that would have the least disruptive effect on the company. (ECF No. 36-3, Jordan Decl. ¶¶ 6-7, PageID.619.) Based on this feedback, and his personal observations, Defendants concluded that while Plaintiff was performing at a satisfactory level, his work performance demonstrated that he was less capable than comparable employees with regard to taking on multiple roles within the company, performing new tasks, completing projects within compressed time frames, embracing a leadership mentality, trusting his coworkers, collaborating with others, and streamlining processes. (*Id.* ¶¶ 8, 11.) Jordan then recommended the elimination of Plaintiff's and others' positions at the Auburn Hills location, and his recommendations were adopted by upper management. (*Id.* ¶¶ 9-10.) Plaintiff fails to offer any summary judgment evidence that the criteria used by Defendants in implementing the reduction in force in May 2020 were inappropriate, and it is not the role of the Court to second-guess the business judgment of an employer. *See, Lee v. City of Columbus, Ohio*, 636 F.3d 245, 258 (6th Cir. 2011) ("It is not within the province of the courts to … 'act as super personnel departments to second guess an employer's facially legitimate business decisions.'") (citation omitted); *Correll v. CSX Transp., Inc.*, 378 F. App'x 496, 505 (6th Cir. 2010) ("Thus, [Plaintiff] asks us

to second guess [Defendant's] employment decision, not because she offers admissible evidence that indicates [Defendant's] gender bias, but because she feels that she was treated unfairly. 'Time and again we have emphasized that [o]ur role is to prevent unlawful hiring practices, not to act as a super personnel department that second guesses employers' business judgments.'") (citation omitted).

To the extent Plaintiff contends in his Response brief that he should have been retained over another employer, Chad Wheeler, Plaintiff fails to meet his burden to offer any admissible evidence establishing that he was the plainly superior candidate. *See Payne v. Benteler Auto. Corp.*, No. 21-1238, 2022 WL 1665330, at *3 (6th Cir. May 25, 2022) (to establish pretext through comparator evidence, plaintiff "must present evidence showing that either: (1) he was the 'plainly superior candidate,' such that no reasonable employer would have retained other employees; or (2) he 'was as qualified as if not better qualified' than the retained employees and the record contains "other probative evidence of discrimination.'") (citing *Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 815 (6thCir. 2011)). Plaintiff offers no evidence as to Mr. Wheeler's performance or qualifications, and only his subjective and conclusory allegations as to his own qualification relative to Mr. Wheeler, however, even if that were enough (which it is not), "[s]imply being 'more qualified' is not sufficient to prove that he is the plainly superior candidate." *Payne*, 2022 WL 1665330, at *4. As stated above, "[i]n a work force reduction case, unlike a hiring

37

case, we can assume that all of the employees are qualified to perform their job since they were actually performing it at the time of their discharge." *Barnes*, 896 F.2d at 1469 n.18.

Plaintiff also points out that his prior performance evaluation *in 2018* was satisfactory. However, the fact that Plaintiff's prior evaluation in 2018, before the necessity for a reduction in force arose in March 2020, was satisfactory is not at issue, because, again, qualified individuals will be let go in an economic reduction in force. *See Brocklehurst v. PPG Indus.*, 123 F.3d 890, 896 (6th Cir. 1997) ("In a RIF, qualified employees are going to be discharged."). "When an employer implements a RIF, the unfortunate fact is that someone has to go. It is not the prerogative of the courts to engage in the post-hoc management of the employer's internal affairs by second-guessing how personnel could have been more equitably allotted, or cost-savings better realized." *Norbuta v. Loctite Corp.*, 1 F. App'x 305, 314 (6th Cir. 2001). And, in a reduction in force, the issue is not solely an employee's performance, but his performance relative to others that is considered in selecting positions for elimination.

"[T]he law does not require employers to make perfect decisions, nor forbid them from making decisions that others may disagree with." *Browning v. Dep't of Army*, 436 F.3d 692, 698 (6th Cir. 2006) (citation omitted). Viewing the record in a light most favorable to Plaintiff, the Court finds that he has not proffered sufficient

evidence to allow a reasonable jury to infer that Defendants' stated reasons for terminating him had no basis in fact, and that he was instead terminated because he has taken FMLA leave. Accordingly, the Court grants Defendants summary judgment on Plaintiff's FMLA retaliation claim and dismisses that claim with prejudice.

### D. Other Matters

Defendants filed a motion to strike Plaintiff's Response as untimely, and alternatively to strike portions of Plaintiff's Affidavit that are not based on Plaintiff's personal knowledge. (ECF No. 39.) Even considering Plaintiff's untimely Response brief and the unobjectionable portions of his Affidavit, Defendants' summary judgment motion prevails. Therefore, Defendants' motion to strike (ECF No. 39) is DENIED AS MOOT.

### IV.  CONCLUSION

For the reasons set forth above, the Court GRANTS Defendants' Motion for Summary Judgment (ECF No. 36) and DISMISSES Plaintiff's claims WITH PREJUDICE.

Defendants' Motion to Strike Plaintiff's Summary Judgment Response (ECF No. 39) is DENIED AS MOOT.

IT IS SO ORDERED.

Dated: June 5, 2023                          s/Paul D. Borman
                                             Paul D. Borman
                                             United States District Judge